IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SHAKIR ADAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:13-CV-02331-STA-dkv |
| | ) | |
| BLAIR J. LEIBACH, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ORDER DENYING MOTION FOR AN ORDER COMPELLING
RESPONDENT TO FILE A REPLY BRIEF,
DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,
DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Shakir Adams was convicted of first-degree premeditated murder following a jury trial in the Criminal Court of Shelby County, Memphis, Tennessee. After unsuccessfully appealing his conviction, Adams sought state post-conviction relief, which was denied.

Proceeding initially with appointed counsel and now *pro se*, Adams seeks federal habeas corpus relief challenging his conviction pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)[1] For the reasons discussed below, the petition is denied.[2]

---

[1] Adams, who is designated as Tennessee Department of Corrections prisoner No. 324670, is currently incarcerated at Trousdale Turner Correctional Center ("TTCC") in Hartsville, Tennessee. The current warden of TTCC is Blair J. Leibach. Accordingly, pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules), the Clerk is directed to substitute Leibach as the Respondent.

[2] Adams' motion for an order compelling Respondent to file a reply brief (ECF No. 24) is denied as moot.

# THE LEGAL STANDARD

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the federal habeas statute, relief is available "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal court's power is restrained further where the petitioner's federal claim was "adjudicated on the merits" in the state courts. *See* 28 U.S.C. § 2254(d). Under those circumstances, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter,* 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

There is little case law addressing the "unreasonable determination of the facts" standard of § 2254(d)(2). The Supreme Court has explained, however, that a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *See Wood v. Allen*, 558 U.S. 290, 301 (2010). Moreover, although the Sixth Circuit has described the standard as "demanding but not insatiable," it construes the

standard in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2011) (quotation marks and citation omitted).

Before requesting relief under § 2254, a federal habeas petitioner must first exhaust available state remedies. *See* U.S.C. § 2254(b) and (c); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); Rule 4, Section 2254 Rules. To exhaust his state remedies, a petitioner must present the very issue on which he seeks relief from the federal court to all levels of state court review, including the state's highest court on discretionary review, except where the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). Because Tennessee has so disavowed state supreme court review, *see* Tennessee Supreme Court Rule 39, a prisoner in state custody in Tennessee will have exhausted state remedies when he presents his claim "to the Court of Criminal Appeals or the Supreme Court, and relief has been denied." *Id.*; *see also Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003).

## BACKGROUND

The following background summary is drawn from the Tennessee Court of Criminal Appeals' recitation of the evidence presented at Adams' trial. *See State v. Adams*, No. W2006-02038-CCA-R3-CD, 2008 WL 1891451, at *1915052, at *1 (Tenn. Crim. App. Apr. 29, 2008).[3] The procedural facts are drawn from the state court record filed by Respondent. (*See* State Rec., ECF No. 13.)

---

[3] Cites to the TCCA's published opinions in Adams' case will be in Westlaw citation format only and will not include the ECF docket number.

3

## I. Adams' Trial

Shakir Adams was charged with the premeditated first degree murder of John Cooper. At Adams' trial, two women testified that they observed a group of men arguing with Cooper in a grassy area of their apartment complex on November 7, 1999. Later in the day, the women saw several men, including Shakir Adams and Tony Johnson, running after Cooper. The women saw that Adams and Johnson were shooting toward the victim. One of the women eventually observed Cooper lying on the ground dead. An autopsy of Cooper showed that he died of multiple gunshot wounds.

Five spent nine-millimeter shell casings and one live nine-millimeter bullet were recovered from the crime scene. A witness testified that Adams later confessed to her in her apartment that he shot Cooper. A nine-millimeter gun was later retrieved from the witness' couch. A forensic scientist testified that that a bullet recovered from the victim's body possessed the same or similar characteristics as a bullet fired from the gun retrieved from the couch and that the five spent shell casings recovered from the crime scene were also fired from that gun.

Adams was convicted of premeditated first degree murder and sentenced to life with the possibility of parole.

## II. Post-Trial Proceedings

Adams appealed his conviction and sentence to the Tennessee Court of Criminal Appeals ("TCCA"). *See Adams*, 2008 WL 1891451, at *1. The TCCA denied relief, *id.* at *11, and the Tennessee Supreme Court denied permission to appeal. (*See* APA Den., ECF No. 13-9 at 80.) Adams thereafter sought post-conviction relief alleging numerous grounds for relief from his conviction, including that his trial counsel had been ineffective. (*See* P-C Pet., ECF No. 13-10 at 19.) The post-conviction court appointed counsel for Adams and, after an evidentiary hearing,

denied relief. *See Adams v. State*, No. W2010-00217-CCA-RC-PC, 2011 WL 744736, at *1 (Tenn. Crim. App. March 1, 2011). Adams appealed. *Id.* The TCCA affirmed the lower court's decision, *id.* at *7, and the Tennessee Supreme Court denied permission to appeal. (*See* APA Den., ECF No. 13-15 at 97.)

### III.   Adams' § 2254 Petition

Through his appointed attorney, Adams filed a § 2254 petition in this case raising a single claim: trial counsel was ineffective for failing to call co-defendant Tony Johnson as a witness in Adams' criminal trial. (*See* Pet., ECF No. 1 at 4.) After Respondent filed his answer to the petition (*see* Ans., ECF No. 12), Adams' appointed attorney was granted leave to withdraw. (*See* 11/2/15 Order, ECF No. 22.)

### DISCUSSION

In his sole federal habeas claim, Adams contends, as he did before the TCCA, that his trial counsel was ineffective for failing to call co-defendant Tony Johnson as a witness to testify that Adams was not involved in the shooting. Respondent argues that Adams' claim is without merit.[4] For the following reasons, the Court agrees.

---

[4] Respondent argues that Adams' claim is untimely because he filed the petition in this case after the limitations period had expired. (*See* Ans., ECF No. 12 at 9-10.) Respondent further argues that the statute of limitations should not be equitably tolled for the period of time Adams' *in forma pauperis* application was pending in his prior-filed case (12-cv-2240), which was dismissed on the mistake of his appointed counsel. (*See id.*) Adams has a colorable argument for equitable tolling. *See e.g.*, *Foster v. Edwards,* 165 F.3d 27 (table), No. 97-4218, 1998 WL 702336, at *1 (6th Cir. Sept. 23, 1998) (holding that statute of limitations was tolled during the pendency of petitioner's *in forma pauperis* application, despite the fact that ultimately the petitioner was denied pauper status) (table decision). However, because the Court finds that Adams' claim is without merit, it need not reach the statute of limitations issue. *See Davis v. Maclaren*, No. 15-11528, 2016 WL 1090434, at *2 (E.D. Mich. Mar. 21, 2016) ("The statute-of-limitations defense . . . is not jurisdictional, *Day v. McDonough*, 547 U.S. 198, 205 (2006), and Petitioner's claim does not warrant federal habeas relief. The Court therefore proceeds directly to the merits of Petitioner's claim."). *Cf. Pough v. United States,* 442 F.3d 959, 965 (6th Cir. 2006)

## A. Governing Supreme Court Standards

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under *Strickland*, a criminal defendant claiming ineffective assistance of counsel must "show both that his counsel provided deficient assistance and that there was prejudice as a result." *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 688). *Strickland*'s deficient-performance prong requires "a person challenging a conviction [to] show that 'counsel's representation fell below an objective standard of reasonableness.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). To prove deficient performance, the challenger faces a "'strong presumption'" that counsel's representation was within the "'wide range'" of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). To meet *Strickland's* prejudice prong, a criminal defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In proceedings under § 2254(d), a federal court's review of the state court's ineffective-assistance determination is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

## B. The Post-Conviction Hearing and the TCCA's Decision

The post-conviction court held an evidentiary hearing on Adams' amended petition for post-conviction relief. Represented by appointed counsel, Adams sought to establish that his

---

(in a § 2255 habeas proceeding, court is not required to rule on the statute of limitations issue if the petition may be denied on other grounds).

trial counsel had been ineffective in several ways, including by failing to call co-defendant Tony Johnson to the stand at Adams' criminal trial to testify that Adams was not involved in the murder.⁵ *Adams*, 2011 WL 744736, at *8.

At Adams' post-conviction hearing, Johnson testified that he hand-wrote an affidavit in 2001 recanting an earlier statement he had made to law enforcement. In that earlier statement, Johnson told officers that he saw Adams "stand over the victim and shoot him two times." *Id.* at *10. Johnson's later-prepared affidavit, which he did not sign or date, stated:

> On the above time in [sic] date 12–9–99 2:15 am I made a very untrue statement on [the petitioner]. I place[d] him into a homicide which he had no knowledge of. I'm sorr[y] for putting this court through so much trouble d[ue] to my wrong doing. So I'm asking the courts to release [the petitioner] cause he didn't have any knowledge of the homicide which occurred on 11–07–99.

*Id.*

Johnson testified at the post-conviction hearing that he gave one copy of the affidavit "to [his] lawyer; one to the prosecutor; and one to Mr. Adams." (P-C Hrg. Tr., ECF No. 13-13 at 83.) He stated that it had been his intention to testify in court that Shakir Adams did not shoot John Cooper. (*Id.* at 84.) His original statement to law enforcement, he said, was intended "to make it look like that [Adams was] the one who did it when actually it was me." (*Id.*) When asked whether Adams' trial counsel had ever spoken with him about testifying on Adams' behalf, Johnson answered "yes," but stated that he was never called to testify. Instead, "they just called me back and sent me back to the penitentiary—to Whiteville." (*Id.* at 85.) On re-direct examination, Johnson testified that, at the time he spoke with trial counsel, his "appeal, it was already gone. It was over with." (*Id.* at 88.)

---

⁵ Co-defendant Johnson was tried and convicted of second degree murder three years before Adams' trial took place. (*See* P-C Hr. Tr., ECF No. 13-13 at 87.)

7

When asked by the post-conviction judge why he did not sign the affidavit, Johnson replied "At that point in time, I don't know." (*Id.* at 93.) When the judge asked Johnson "[s]o, you're actually saying then, that you were actually guilty of murder first degree," Johnson responded "They found me guilty of what they found me guilty of, sir." (*Id.* at 94.)

In his testimony at the post-conviction hearing, Adams' trial counsel stated that he had subpoenaed Johnson and had him brought to the jail from prison to have him testify at Adams' trial. (*Id.* at 77.) Counsel testified that, when he met with Johnson at the jail, Johnson flatly refused to testify or sign the affidavit:

> Q: Did you file any additional motions in this case if you remember?
>
> A: I believe there were several motions that had already been filed and heard. There was one issue regarding an affidavit that Tony Johnson was going to sign exculpating [Adams]. In fact, I subpoenaed and had Tony Johnson who was being housed at the Tennessee Department of Corrections—had him brought here for trial to testify and talk to him about that very issue.
>
> Q: Did you talk to Mr. Johnson?
>
> A: I went down in the jail and visited him, I believe, prior to trial. It may have been after the first day of trial. I think it was actually (indiscernible) because they had a problem getting him in—bringing him in, and I talked to them; it was probably about 8:00-8:30 that night. I don't know, we sat down and talked for about forty-five minutes, and I shared the contents of that conversation with Mr. Adams—Shakir Adams—and his father because Tony Johnson was, at the time—*he just point blank told me, "I got my appeal pending; I'm not about to get on the stand and say anything to this effect. I'm not about to sign this affidavit because it's going to affect me and what I'm trying to do." And at the time, I guess, he was pending—his direct appeal was pending, I think.*

(*Id.* at 76-77) (emphasis added).

In its decision denying post-conviction relief, the lower court recounted Johnson and trial counsel's conflicting testimonies. (P-C Order, ECF No. 13-10 at 88-89.) The court concluded that "[t]rial [c]ounsel's conduct regarding the issue of the affidavit and the general matter of alibi witnesses 'falls within the wide range of professional assistance.'" (*Id.* at 89) (quoting

*Strickland*, 466 U.S. at 689). Adams appealed the post-conviction court's decision to the TCCA. The TCCA affirmed the lower court's determination that trial counsel's performance was not deficient under *Strickland*'s first prong, and stated in pertinent part:

> The petitioner asserts that Johnson wanted to testify at his trial but was never called. He alleges that trial counsel's explanation that Johnson refused to testify because his appeal was pending cannot stand because Johnson's appeal had concluded at the time of the petitioner's trial. The post-conviction court accredited counsel's testimony, and we will not revisit that determination. We note that even if Johnson's direct appeal had concluded, he was not precluded from seeking other relief.

*Adams*, 2011 WL 744736, at *11.

### C. The TCCA's Decision was not Based on an Unreasonable Factual Determination

Under *Strickland*, a defense attorney's failure to call a "valuable" witness at trial may constitute ineffective assistance in violation of the accused's Sixth Amendment right to counsel. *See Butler v. Hosking*, 47 F.3d 1167 (table decision), 93-5976, 1995 WL 73132, at *5 (6th Cir. Feb. 22, 1995). Here, Adams claims that his trial counsel should have called Johnson to testify that Adams did not shoot the victim and that counsel's failure to do so constituted deficient performance which prejudiced Adams. (*See* Pet., ECF No. 1 at 12.) In support, Adams contends that he has produced evidence that "irrefutably establish[es] that the testimony of the petitioner's trial counsel, relied on by the court to deny the defendant's issue, was false." (*Id.*) Adams' evidence is the TCCA's decision denying Johnson's direct appeal on September 21, 2004, two years before Adams' trial. *See State v. Johnson*, No. W2003-02098-CCA-R3-CD, 2004 WL 2108234, at *1 (Tenn. Crim. App. Sept. 21, 2004). According to Adams, the TCCA's decision in Adams' post-conviction appeal crediting trial counsel's version of his meeting with Johnson was, therefore, based on a "factual error" that led to an erroneous "legal conclusion that counsel was not ineffective." (Pet., ECF No. 1 at 13.) Because Adams's sole argument is that an

9

erroneous factual determination caused the TCCA to reach an incorrect conclusion about trial counsel's performance, the Court construes Adams' claim as challenging the TCCA's determination under § 2254(d)(2).

As noted, state-court factual findings are presumed to be correct on federal habeas review, and a petitioner seeking relief under § 2254(d)(2) must rebut the presumption with "clear and convincing" evidence. *Ayers,* 623 F.3d at 308 (construing § 2254(d)(2) in tandem with § 2254(e)(1)). To constitute "clear and convincing" proof, the petitioner's evidence must "adequately undermine" the state court's factual finding, *O'Neal v. Bagley*, 743 F.3d 1010, 1022 (6th Cir. 2013), not merely "shed some doubt on the credibility of certain witnesses." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). The presumption of correctness "is not exclusive to a state court's explicit findings, but also applies to those implicit findings of fact that are inherent in its resolution of conflicting evidence." *McPherson v. Woods*, 506 F. App'x 379, 387 (6th Cir. 2012) (citing *Marshall v. Lonberger,* 459 U.S. 422, 433 (1983)).

In the present case, the factual finding that Adams must rebut by clear and convincing proof is the state-court finding that Johnson told trial counsel that he would not testify. That factual finding is implicit in the post-conviction trial court's decision. The TCCA accepted the implicit finding by refusing to disturb the trial court's underlying determination that trial counsel's account of his conversation with Johnson was more credible than Johnson's account. *See Adams*, 2011 WL 744736, at *11.[6]

---

[6] The relevant state-court finding of fact can also be viewed as the state court's credibility determination. *See McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) ("fact-based determination[s] subject to scrutiny under § 2254(d)(2)" include "'facts in the sense of a recital of external events and the credibility of their narrators.'") (quoting *Thompson v. Keohane,* 516 U.S. 99, 110 (1995)).

Adams has not produced clear and convincing evidence to rebut the presumption of correctness that attends the state-court factual determination that Johnson refused to testify on Adams' behalf. The state-court record shows that Johnson's appeal was concluded by the time he spoke with Adams' trial counsel. *See Johnson*, 2004 WL 2108234, at *1. At most, that indisputable fact only "sheds some doubt," *Seymour*, 224 F.3d at 552, on trial counsel's credibility; it does not "adequately undermine" the factual finding that Johnson did not refuse to testify. *O'Neal*, 743 F.3d at 1022. The judge who heard the witnesses and observed their demeanors could still find trial counsel's account of the conversation as a whole, and specifically as to Johnson's unwillingness to testify, more credible than Johnson's contrary account. *See e.g.*, *Romero-Hernandez v. Mercado-Quinonez*, 94 F. Supp. 3d 118, 124 (D.P.R. 2015) (denying habeas relief on petitioner's claim that trial counsel was ineffective for failing to call alibi witness; the "trial court had a sworn statement by [the alibi witness] and discredited it, finding [trial] attorney['s] testimony more credible.").

Indeed, notwithstanding the fact that Johnson had concluded his direct appeal, the state court had numerous reasons to credit counsel's testimony that Johnson had "point blank" refused to take the stand, (P-C Hrg. Tr., ECF No. 13-13 at 77), over Johnson's testimony that he had been ready and willing to testify. (*Id.* at 85.) First, as the TCCA noted, Johnson "was not precluded from seeking other relief," *Adams*, 2011 WL 744736, at *11, and thus might still have been motivated to preserve his prospects for post-conviction remedies.[7] Second, trial counsel's

---

[7] Adams demonstrates, and Respondent does not dispute, that the state-law statute of limitations for Johnson to file a post-conviction petition had expired by the time trial counsel spoke with him. (*See* Pet., ECF No. 1 at 12 (citing T.C.A § 40-30-102(a)). However, under Tennessee law, relief from a final judgment of conviction is not entirely foreclosed after one-year, as due process considerations may toll the one-year statute of limitations for the filing of a petition for writ of *coram nobis*. *Harris v. State*, 301 S.W. 3d 141, 145 (Tenn. 2010) (due process may require tolling of the one-year statute of limitations under T.C.A. § 27-7-103).

11

details about the time, place, and circumstances of his conversation with Johnson lend credibility to his statement that Johnson told him that he would not testify. *See e.g., Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1297-98 (11th Cir. 2015) (where trial counsel's statements in his affidavit were highly detailed, state-court determination that counsel's account was credible was not an unreasonable determination of fact). Third, Johnson's insistence that he had wanted to help Adams by inculpating himself is suspect. Johnson did not sign the affidavit in lieu of testifying and could not, when queried by the post-conviction judge, explain why he had not done so. (*See* P-C Hrg. Tr., ECF No. 13-13 at 93.) There is no evidence that Johnson executed a new affidavit or did anything else prior to the post-conviction hearing to help Adams. Moreover, when Johnson would not confirm to the post-conviction judge that he was admitting to first-degree murder, the judge could have perceived in Johnson an unwillingness, even then, to inculpate himself.

For these reasons, the Court finds that Adams' evidence regarding the termination date of Johnson's appeals does not constitute clear and convincing proof that Johnson did not refuse to testify on Adams' behalf. Johnson has failed to show that the TCCA based its ruling that trial counsel's performance was not deficient on "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Because the Court must accept as correct the state-court finding that Johnson refused to testify, there is no basis for Adams' allegation that trial counsel deficiently performed by failing to call Johnson as a witness. *See e.g.*, *Conklin v. Warren*, No. 2:12-CV-10385, 2014 WL 584901, at *9 (E.D. Mich. Feb. 14, 2014) (where petitioner's uncle refused to

testify, trial counsel was not ineffective for failing to call him as a witness). Adams is therefore not entitled to habeas relief.[8]

The Court having found that Adams is not entitled to habeas corpus relief, the petition is denied. Judgment shall be entered for Respondent.

**APPEAL ISSUES**

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Cockrell*, 537 U.S. at 336; *see also*

---

[8] In his appeal to the TCCA, Adams raised the alternative argument that, even if Johnson had refused to testify, trial counsel should nevertheless have called Johnson to the stand to invoke his 5th Amendment right against self-incrimination. (*See* Adams P-C Br., ECF No. 13-15 at 26-28.) Adams argued that calling Johnson to the stand under those circumstances would have established that he was unavailable, thereby paving the way for trial counsel to get Johnson's unsigned, undated affidavit admitted into evidence. (*Id.*) Adams did not present this alternative argument in his habeas petition, but instead based his claim solely on the assertion that trial counsel's version of his conversation with Johnson should not be believed. (*See* Pet., ECF No. 1 at 12.)

13

*Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). Although a COA does not require a showing that the appeal will succeed, *Cockrell*, 537 U.S. at 337, a court should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that the § 2254 petition is meritless for the reasons previously stated. Because any appeal by Adams on the issues raised in his § 2254 Petition does not deserve attention, the Court denies a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5). In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore certified, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is denied.[9]

IT IS SO ORDERED this the 27th day of September, 2016.

s/ S. Thomas Anderson
UNITED STATES DISTRICT JUDGE

---

[9] If Adams files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).